UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JESSICA CAIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-197-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Jessica Cain appeals the Commissioner of Social Security's denial of her applications for supplemental security income and disability insurance benefits. Cain contends that the Administrative Law Judge ("ALJ") assigned to her case erred by failing to properly evaluate the opinion evidence and by failing to consider whether her migraine headaches equaled Listing 11.02B. However, the ALJ sufficiently articulated the reasons for his findings with respect to these issues and his decision is support by substantial evidence. As a result, Cain's motion to vacate the Commissioner's decision will be denied.

## I.    Procedural Background

Cain filed the instant applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") on December 16, 2021. [*See* Administrative Transcript 245, 252; hereafter, "Tr."] These claims were denied initially on April 15, 2022, and following reconsideration on April 25, 2022. [Tr. 152, 157, 167, 172] ALJ Jonathan Stanley held an administrative hearing on September 7, 2022, and issued a written opinion denying benefits on September 20, 2022. [Tr. 50-84; 35-45] The Appeals Council denied Cain's request for

review on January 26, 2023.  Thus, the matter is ripe for judicial review.  *See* Tr. 1-3; 42 U.S.C. § 405(g).

## II.  Factual Background

Cain was 40 years old at the time she filed her applications for DIB and SSI.  She alleges that she became unable to work on November 15, 2021, due to idiopathic intracranial/pseudotumor cerebri, hypertension, headaches, a tailor's bunion of the left foot, and a blood clot in her pelvis.  [Tr. 310, 312]

Cain attended school through the eleventh grade and later obtained her GED.  [Tr. 491] She worked primarily from home as a customer service representative from 2011 through 2021.  [Tr. 242, 55]  This required Cain to speak with customers over the telephone, enter data on a computer, and lift boxes that weighed up to 30 pounds.  Cain also worked as a shift supervisor at a Rite-Aid store from 2009 to 2010, where she was on her feet eight hours each shift and supervised up to ten employees.  [Tr. 59-60]

Cain resided with her husband and teenaged son at the time of her application.  She reported that she was able to prepare light meals and perform light housework a few times per week.  [Tr. 295]  Cain shopped approximately once per week for about an hour on each occasion.  She reports that, since her symptoms began, she had been unable to travel or spend time with friends. [Tr. 297]

Cain also reports that she began suffering from headaches during her childhood.  [Tr. 302]  These headaches worsened in 2012 and she was ultimately diagnosed with intracranial hypertension, which affected her vision and caused migraines and nausea.  [Tr. 288, 421]  She also reported experiencing problems with concentration and memory.  *Id.*  Cain indicates that medications did not help relieve her associated pain.  [Tr. 289]

- 2 -

Cain received primary care treatment at Mercy Health Clinic in Irvine, Kentucky from 2016 through 2022.  [Tr. 416-472, 502-654]  Practitioners there prescribed aspirin and Lasix for idiopathic intracranial hypertension and Arnold-Chiari malformation.  [Tr. 423, 443]  Cain reported that she was supposed to have surgery for her Arnold Chiari malformation, but was afraid to take anticoagulation "because she failed the Plavix trial in the past and she had platelet problems."  *Id.*

On December 10, 2020, Cain received an eye examination following complaints of blurry vision.   [Tr. 473-482]  She was diagnosed with farsightedness, astigmatism, papilledema, and dry eye syndrome.  [Tr. 482]

Gina Land, M.D., of Baptist Health Richmond, treated Cain in 2021 for complaints of menorrhagia and dysmenorrhea.  [Tr. 342- 408]  An ultrasound detected uterine fibroids and a partial thrombosis within a right adnexal vein.  [Tr. 360]  Land advised Cain to keep taking 325 mg. of aspirin and consult with a hematologist.  [Tr. 358]  But as of May 2021, Cain reported to her primary care provider that she was supposed to see a specialist concerning her pelvic blood clot, but had not done so.  [Tr. 424]

Cain underwent a physical exam on March 11, 2022.  [Tr. 490]  At that time, Jonelle DeLawrence, M.D., noted that Cain's chief complaints were idiopathic intracranial hypertension caused by pseudotumor cerebri and a blood clot in her right groin/pelvic area. DeLawrence described Cain as obese and observed that she ambulated with a normal posture and gait.  [Tr. 491-92]  DeLawrence observed, however, that Cain "gave a very poor effort" during testing of her grip strength.  Examination of Cain's spine was normal, with no evidence

of muscle spasm.  [Tr. 493]  Her muscle strength was normal at 5/5 throughout her extremities, and her deep tendon reflexes were intact and symmetrical.  *Id.*

DeLawrence concluded that "[t]here were some positive physical findings related to [Cain's] complaints as documented in the above physical exam section."  Accordingly, she found that Cain may have some limitations with respect to prolonged walking, standing, or sitting and carrying and lifting objections weighting more than 20 pounds.  [Tr. 493]  DeLawrence also noted that, due to Cain's alleged dizziness, she would likely require a workplace environment free of hazards such as open machinery or unprotected heights.  [Tr. 494

On April 13, 2022, Christine Booth, M.D., reviewed Cain's records and provided an opinion regarding Cain's ability to work based on the medical evidence in the file.  [Tr. 115-16]  Booth concluded that Cain could occasionally lift and/or carry up to 50 pounds and could frequently lift and/or carry up to 25 pounds.  Further, she determined that Cain could sit and stand and/or walk for about six hours in an eight-hour workday.  *Id.*  Cain did not submit any new evidence upon her request for reconsideration and Robert Culbertson, M.D., adopted Booth's opinion on April 25, 2022.  [Tr. 136]

Edd Easton-Hogg, PsyD. performed a consultative mental examination on February 8, 2022.  [Tr. 485-87]  Cain advised Easton-Hogg that she had not previously received mental health treatment, but reported experiencing anxiety and stress and getting poor sleep.  She reported driving rarely, shopping with assistance, and visiting family routinely.

Easton-Hogg reported that Cain's attention to task and concentration appeared good.  She was alert and oriented to the year, month, day, and location.  She was able to spell "world" backwards and perform simple mathematical calculations.  There were no deficits in her

- 4 -

memory and her fund of knowledge appeared average.  Cain's capacity for abstraction was intact and her speech flow was typical; her judgment and reality testing appeared adequate. However, Easton-Hogg noted that Cain's coping abilities appeared overwhelmed and poor. He also reported that her skills deficits included poor decision-making ability at times.

Easton-Hogg concluded that Cain's capacity to understand and remember instructions toward the performance of simple tasks appeared affected by her symptoms to a moderate degree.  Likewise, he believed her ability to sustain concentration and have persistence to carry out simple instructions was affected to a moderate degree.  He additionally reported that her capacity to respond appropriate to supervisors, coworkers, and the public, and to tolerate the stress of day-to-day employment was affected to a moderate degree.  Easton-Hogg defined "moderate" as: "There is a moderate limitation in this area, but the individual is still able to function satisfactorily."  [Tr. 487]

Mary Thompson, Ph.D., reviewed Cain's file on February 15, 2022, and provided an opinion regarding Cain's ability to perform work activities considering her alleged mental conditions.   [Tr. 125-26]  After reviewing all the evidence, including Easton-Hogg's examination notes and opinion, Thompson noted that Cain had moderate limitations in her ability to understand, remember, and carry out detailed instructions.  Thompson also believed that Cain's abilities to interact with the public, get along with co-workers, respond to changes in the work setting, and to maintain attention and concentration for extended periods were moderately limited.  [Tr. 125]

Thompson concluded that Cain was able to understand and remember simple instructions and procedures requiring brief learning periods, usually 30 days or less. Thompson also opined that Cain could sustain attention, concentration, effort and pace for

simple tasks requiring little independent judgment and involving minimal variations.  She believed that Cain could interact frequently as needed with supervisors and peers, but only occasionally with the public.  Finally, Thompson reported that Cain could adapt adequately to situational concerns and changes with reasonable support and structure.  [Tr. 126]  Dan Vandivier, Ph.D., echoed Thompson's findings upon Cain's request for reconsideration.  [Tr. 133-34]

After considering the entire record, ALJ Stanley determined that Cain had the following severe impairments: pseudotumor cerebri; idiopathic intracranial hypertension/benign intracranial hypertension; Arnold-Chiari malformation type 1; migraine headaches; bilateral hand and finger pain, stiffness and numbness by report; bilateral ankle and foot pain, stiffness and numbness by report; hypermetropia; astigmatism; papilledema; dry eye syndrome; obesity; generalized anxiety disorder; panic disorder; and obsessive compulsive disorder by report.  He concluded that these medically determinable impairments significantly limited Cain's ability to perform basic work activities, but that that none of the impairments or combination of impairments met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ subsequently determined that Cain had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can

> occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can occasionally balance (with "balancing" defined as maintaining body equilibrium to prevent falling when walking, standing, crouching or running on narrow, slippery, or erratically moving surfaces); can occasionally stoop, kneel, crouch and crawl; can frequently handle, finger, and feel; can occasionally operate foot pedals; cannot work outdoors; must avoid concentrated exposure to temperature extremes, humidity, wetness, pulmonary irritants and loud noise; can perform work that requires frequent far acuity; can frequently read computer screens and normal 11 point font size print; can

frequently handle small objects; can avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles, but cannot work at unprotected heights or around hazards such as heavy equipment or moving mechanical parts; can understand, remember and carry out simple instructions and use judgment to make simple work-related decisions; can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision; can manage and tolerate occasional changes in a routine work setting; can adapt to the pressures of simple routine work; and can interact occasionally with supervisors, coworkers, and the general public.

[Tr. 41]

The ALJ determined that Cain's RFC precluded her from returning to her past relevant work.  However, considering her age, education, work experience, and RFC, a vocational expert testified that there were jobs existing in significant numbers in the national economy that Cain could perform.  Therefore, the ALJ concluded that she had not been under a disability through the date of the decision, September 20, 2022.

## III.    Standard of Review

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that she suffers from a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If she can, she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial

- 8 -

evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.    Discussion

### A.    The ALJ adequately explained supportability and consistency.

An ALJ is not required to give specific evidentiary weight to any particular medical opinion, but must articulate in the decision the persuasive of the medical opinions that appear in the record. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Factors to be considered in determining how much weight to give an opinion include supportability, consistency, the source's relationship with the claimant, the purpose, length, and extent of the treatment relationship, frequency of examinations, and whether the source is a specialist. §§ 404.1520c(b); 416.920c(b). Supportability and consistency are the most important of these factors, and the ALJ must explain how he considered them in weighing a source's opinion. *Id.* Cain contends that ALJ Stanley erred as a matter of law by failing to adequately consider the consistency and supportability of the opinions of Drs. Thompson, Vandivier, and Easton-Hogg.

The ALJ found Thompson, Vandivier, and Easton-Hogg's opinions persuasive "because they are consistent with one another and supported by the record as a whole." [Tr. 43] He noted Cain's subjective complaints regarding her mental health, but explained that she had never treated with mental health professionals or otherwise obtained sustained treatment for mental health symptoms. *Id.* Under these circumstances, the ALJ sufficiently explained

his reasons for relying on these opinions, as there was no additional evidence in the record concerning Cain's mental health.

**B.     Easton-Hogg's opinion was consistent with that of the state agency consultants.**

Cain also contends that the ALJ erred by failing to adequately assess and reconcile Easton-Hogg's opinions and those of the state agency psychological consultants.  In so doing, she focuses on Easton-Hogg's assessment of "moderate" limitations regarding Cain's ability to understand, remember, and concentrate on simple tasks and the state agency consultants' conclusion that Cain could "understand and remember simple instructions" and "sustain attention, concentration, effort and pace for simple tasks."

Although the Social Security regulations do not define "moderate limitation," courts generally agree that moderate limitations are not work preclusive.  *Reynolds v. Berryhill*, 2017 WL 4172625, at *7 (E.D. Tenn. Aug. 31 2017) (collecting cases).  Easton-Hogg noted in his report that "moderate" meant that Cain was "still able to function satisfactorily."

Thompson and Vandivier also observed that Cain had "moderate" limitations when assessing the B criteria of Listing 12.06, but ultimately concluded that she had the ability to carry out "very short and simple instructions."   Contrary to the plaintiff's argument, this finding is consistent with Easton-Hogg's conclusion.  Notably, the consultants remarked that Easton-Hogg's opinion was not more restrictive than their own findings.  [Tr. 114, 135]

**C.   The ALJ adequately evaluated whether the plaintiff's headaches equaled a listing.**

Next, Cain contends that the ALJ failed to adequately evaluate whether her headaches equaled Listing 11.02B.  While Cain concedes that there is not a specific listing dedicated to migraines, she contends that she nevertheless satisfied Listing 11.02, which assesses the

condition of dyscognitive seizures occurring at least once a week for three consecutive months despite adherence to prescribed treatment.

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listing], and give an explained conclusion, in order to facilitate meaningful review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, it is impossible to determine whether the ALJ's decision is supported by substantial evidence. *Id.* The ALJ need not discuss listings that the claimant clearly does not meet. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013).

Social Security Ruling 19-4p provides that "[e]pilepsy (listing 11.02) is the most closely analogous listed impairment for [a medically determinable impairment] of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." 2019 WL 4169635, at *7 (SSA Aug. 26, 2019). To evaluate whether a primary headache disorder equals Listing 11.02, ALJs consider:

> A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

The ALJ also must consider whether "the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.*

The Commissioner concedes that the ALJ "did not give much of a discussion of Plaintiff's migraines at step three," but contends that he provided the appropriate analysis later in his written decision. [Record No. 12, p. 8]  Specifically, the ALJ noted that Cain continued to work despite her complaints of migraines beginning in 2012 following her diagnosis of idiopathic intracranial hypertension caused by pseudotumor cerebri.

When an ALJ does not discuss a listing, the Court must determine whether the record contains evidence that raises a substantial question regarding the claimant's ability to satisfy the listing.  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014). To raise a substantial question, the claimant must "point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing."  *Id.*  Absent such a showing, an ALJ does not commit reversible error by failing to evaluate a listing at step three. *Id.*

Cain cites the following evidence from the record in support of her argument that her migraines equal Listing 11.02B: her subjective complaints of 10/10 right-sided head pain on September 15, 2021; complaints of daily headaches on June 14, 2022; and treatment with aspirin, Lasix, and Maxalt.  Importantly, there is no statement from an acceptable medical source that provides a detailed description of a typical migraine event, the side effects of her medications, or an opinion concerning the limitations in functioning associated with her migraines, as required by SSR 19-4p.  Because the record does not raise a substantial question

concerning the plaintiff's ability to satisfy Listing 11.02B, the ALJ did not err in failing to evaluate the Listing more thoroughly.

> **D.     The ALJ's decision is supported by substantial evidence.**

Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such evidence that reasonable minds might accept as adequate to support a conclusion. *Rogers*, 486 F.3d at 241.  Substantial evidence supports the ALJ's decision here.  As the Court has explained previously, substantial evidence supports the mental component of the ALJ's RFC determination, as it is based on the opinions of state agency consultants and an examining source.  With respect to Cain's physical functioning, the ALJ reasonably relied on her previous ability to work despite her diagnosis of Arnold-Chiari deformity, pseudotumor cerebri, and idiopathic intracranial hypertension; the results of her consultative examination; and the objective medical evidence of record, including Cain's failure to seek treatment from specialists.

> **V.      Conclusion**

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** that the plaintiff's motion to vacate the Commissioner's decision [Record No. 10] is **DENIED**.

Dated: October 27, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky